FILED & JUDGMENT ENTERED
Steven T. Salata

Oct  03  2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In Re: | |
| WILLIAM JOSEPH NOLAN, III AND MARTHA LOUISE HEMPHILL-NOLAN,[1] | Case Number: 09-31456 |
| Debtors. | Chapter 11 |
| EDWARD P. BOWERS, Trustee, | Adversary Proceeding No.: 11-3085 |
| Plaintiff, | |
| vs. | |
| DERICK HEMPHILL and DANIELLA HEMPHILL, | |
| Defendants. | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for trial on Monday, August 20, 2012 through Wednesday, August 22, 2012, and, upon hearing the testimony of the witnesses, reviewing the exhibits proffered into evidence, and considering the arguments and representations of counsel for the

---

[1] This case has been substantively consolidated with *In re Marvin-Waxhaw Associates, LLC*, case number 09-31455.

Plaintiff and the Defendants, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

### A. PROCEDURAL POSTURE

On June 5, 2009 (the "Petition Date"), William Joseph Nolan, III ("Mr. Nolan") and Martha Louise Hemphill-Nolan ("Mrs. Nolan" and, together with Mr. Nolan, the "Debtors") filed a voluntary petition for relief (the "Petition") pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), initiating the above-captioned base bankruptcy case (the "Base Case").  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code and prior to December 16, 2009, the Debtors were in possession of their property and were managing their affairs as debtors-in-possession.  However, on December 30, 2009, in response to a creditor's motion to convert the Base Case to a chapter 7 bankruptcy case, the Court appointed Edward P. Bowers (the "Plaintiff") as the Debtors' chapter 11 bankruptcy trustee.

On September 29, 2010, the Plaintiff filed his chapter 11 *Plan of Liquidation of Marvin-Waxhaw Associates, LLC and William Joseph Nolan, III and Martha Louise Hemphill-Nolan* (the "Plan"), which proposed to liquidate all valuable assets of the Debtors' bankruptcy estate through a liquidating trust operated by the Plaintiff.  On January 20, 2011, the Court entered an order confirming the Plan, as modified therein (the "Confirmation Order").  Through the liquidating trust, the Plaintiff anticipates paying a 15% dividend to creditors holding allowed general unsecured claims against the Debtors' bankruptcy estate.

Pursuant to the Plan and Confirmation Order, as of the February 4, 2011 effective date, the right of the Debtors' bankruptcy estate to recover property pursuant to the provisions of

2

chapter 5 of the Bankruptcy Code vested in the liquidating trust, and the Plaintiff was granted the exclusive authority to prosecute avoidance actions on behalf of the liquidating trust, with all rights and powers of a bankruptcy trustee.

On April 13, 2011, the Plaintiff filed his *Complaint to Avoid Preferential or Fraudulent Transfer* (the "Complaint"), initiating the above-captioned adversary proceeding (this "Adversary Proceeding"). Immediately prior to the initial deadline for responding to the Complaint established by the Federal Rules of Bankruptcy Procedure, the Plaintiff consented to a request by Defendants Derick Hemphill ("Mr. Hemphill") and Daniella Hemphill ("Mrs. Hemphill" and, together with Mr. Hemphill, the "Defendants") for an additional thirty days to respond to the Complaint. At the expiration of the additional thirty days, the Plaintiff filed, on the Defendants' behalf, an *Ex Parte Motion for Order Extending Time to Answer Complaint* seeking another thirty days for the Defendants to respond to the Complaint, which the Court subsequently granted. Immediately prior to the expiration of the court-ordered extension, the Plaintiff again consented to a request by the Defendants for an additional thirty days to respond to the Complaint. On August 12, 2011, the Defendants filed their *Answer and Response to Plaintiff's Adversary Complaint and Defendants' Counterclaims Against Plaintiff/Debtor*.

On June 3, 2011, the Plaintiff filed thirteen separate omnibus objections to claims in the Base Case, including the *Trustee's Ninth Omnibus Objection to Claims and Recommendation Regarding Claims Pursuant to Sections 502, 506 and 507 of the Bankruptcy Code and Rules 3001–3007 of the Federal Rules of Bankruptcy Procedure*, which objected to the Defendants' $185,000.00 unsecured claim listed by the Debtors on Schedule F to the Petition (the "Claim Objection"). The Defendants failed to respond to the Claim Objection. On July 19,

3

2011, the Court entered an order in the Base Case disallowing the Defendants' claim against the Debtors' bankruptcy estate (the "Order Disallowing Claim").

On August 12, 2011, the Defendants filed a motion in the Base Case seeking reconsideration of the Order Disallowing Claim (the "Motion to Reconsider"). The factual foundation for the relief requested in the Motion to Reconsider was that the Defendants understood the Plaintiff's counsel to have been also granting extensions of time for the Defendants to respond to the Claim Objection in the Base Case when the Plaintiff's counsel granted extensions of time for the Defendants to respond to the Complaint in this Adversary Proceeding. The Defendants also alleged a claim in excess of $600,000.00 against the Debtors' bankruptcy estate in the Motion to Reconsider.[2] On November 3, 2011, the Court entered an order allowing reconsideration of the Defendants' claim, but capped the allowable amount of the claim to the $185,000.00 scheduled by the Debtors. In addition, the Court ordered—with the consent of the Plaintiff and the Defendants—that the determination of the allowable amount of the Defendants' claim against the Debtors' bankruptcy estate be litigated in conjunction with this Adversary Proceeding.

### B. THE DEFENDANTS' UNSECURED CLAIM

Mr. Hemphill is the son and Mrs. Hemphill is the daughter-in-law of the Debtors. The Defendants are also employees, business partners and, most relevant to this Adversary Proceeding, long-time creditors of the Debtors. For example, when cash grew scarce for the Debtors (who are in the business of residential real estate development) throughout the past twenty years or so, the Debtors would, in essence, borrow on the Defendants' credit by selling one of their developed lots to the Defendants, who would acquire a purchase money loan from an

---

[2] The deadline for filing proofs of claim in the Base Case was October 6, 2009. The Defendants did not file a proof of claim in the Base Case.

4

independent financial institution to finance the transaction. The Debtors would then make all debt service payments to the financing institution until they found a third party to ultimately purchase the underlying lot. The proceeds from the sale to the third party would be applied first to satisfy the purchase money note in full, with any remaining amounts split between the Debtors and the Defendants. The extensions of credit embodied in these transactions were never formalized by the execution of a promissory note or secured by an interest in real property through the execution of a deed of trust.

In addition to these real estate transactions, the Debtors also borrowed on the Defendants' credit by their exclusive use of credit cards taken out in the Defendants' names. Several of these credit cards had significant outstanding balances as of the Petition Date. The debts owed by the Debtors to the Defendants as of the Petition Date took other forms, including purchases of vehicles and other equipment for the Debtors and infusions of cash into various of the Debtors' business entities. In total, the Debtors actually owed the Defendants $420,274.54 in general unsecured debt as of the Petition Date.

### C. Transfer of the Real Property

On January 17, 2008, the Debtors executed a promissory note in favor of the Defendants in the principal amount of $150,000.00 (the "Promissory Note"). Also on January 17, 2008, the Debtors executed a deed of trust for the benefit of the Defendants as security for the indebtedness evidenced by the Promissory Note (the "Lot 410 Deed of Trust"), which deed of trust encumbered a half-acre, developed, residential real estate lot, platted as Lot 410 in the Crane Valley subdivision in Union County, North Carolina ("Lot 410"). The Promissory Note and Lot 410 Deed of Trust were given in consideration of the Defendants transferring $150,000.00 in

5

cash to the Debtors or an entity controlled by the Debtors.  The Defendants acquired the $150,000.00 by borrowing on the equity in their home.

On April 16, 2009, the Debtors executed a contract agreeing to sell Lot 410 to one of their trade creditors in exchange for the trade creditor:  (a) cancelling an unsecured debt owed by the Debtors in the approximate amount of $89,817.00; and (b) conveying $25,000.00 of fresh cash to the Debtors.  Also on April 16, 2009, the Debtors executed a general warranty deed conveying their fee simple interest in Lot 410 to the aforementioned trade creditor.  On April 20, 2009, the Defendants, in order to facilitate the transaction, released the Lot 410 Deed of Trust by executing a "Satisfaction of Security Instrument," which was recorded four days later on April 24, 2009 (the "Lot 410 Satisfaction").  No portion of the $25,000.00 proceeds from the sale of Lot 410 went to the Defendants.

On May 1, 2009, the Debtors and the Defendants executed a contract whereby the Debtors agreed to transfer their fee simple interest in approximately 4.2 acres of undeveloped real property in Union County, North Carolina (the "Real Property") to the Defendants in exchange for the Defendants' prior release of the Lot 410 Deed of Trust.  On May 12, 2009, twenty-four days prior to the Petition Date, the Debtors executed a general warranty deed conveying their fee simple interest in the Real Property to the Defendants (the "Deed").  On May 15, 2009, the Deed was recorded in Book 5125, Page 599 of the Union County, North Carolina Public Registry.

The weight of the evidence indicates that, at the time the Defendants executed the Lot 410 Satisfaction, the Debtors intended to give a replacement security interest in a different half-acre, developed, residential real estate lot owned by the Debtors, which is platted as Lot 427 in Crane Valley and is across the street from Lot 410 ("Lot 427").  However, the Debtors learned

6

that a third party was interested in purchasing Lot 427 and instructed the attorneys handling these transactions to refrain from recording a deed of trust on Lot 427 until the Debtors determined whether or not they would be selling Lot 427 to the third party in the near future. Accordingly, at some point in time between April 20, 2009 and May 1, 2009, the deal between the Debtors and the Defendants changed, such that the replacement interest to be received by the Defendants in exchange for the release of the Deed of Trust was not a security interest in Lot 427, but rather a fee simple interest in the Real Property.

Neither the Plaintiff nor the Defendants offered any reliable evidence to the Court as to the exact value of the Real Property at the time the Deed was executed, even though an extreme range of valuations have been posited to the Court through the pleadings and testimony in this Adversary Proceeding. Notwithstanding, all parties are in agreement that the Real Property was worth at least $100,000.00 at the time of the transfer at issue.

## II.    JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and § 10.1 of the confirmed Plan. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (F) & (H). By stipulation of the parties, this Court has the authority to enter a final order on the Plaintiff's causes of action alleged under §§ 547, 548 and 550 of the Bankruptcy Code. This Court has the power to determine the extent of the Defendants' allowed claim against the Debtors' bankruptcy estate. *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57–58 (1989).

### III. CONCLUSIONS OF LAW

#### A. AVOIDANCE OF THE TRANSFER OF THE REAL PROPERTY

Through the Complaint, the Plaintiff seeks to avoid the transfer of the Real Property to the Defendants on a variety of substantive avoidance theories, including preference, actual fraud and constructive fraud theories under both state and federal law. The Plaintiff also alleges a cause of action pursuant to § 550 of the Bankruptcy Code, seeking an order awarding the Plaintiff the Real Property as the remedy for the avoidable transfer. The Court will first discuss the substantive avoidance causes of action and then turn to the remedial claim.

#### 1. Fraudulent Transfer—11 U.S.C. § 548(a)(1)(A)

The trustee may avoid any transfer of an interest of the debtor in property that was made with the actual intent to hinder, delay, or defraud any entity to which the debtor was indebted. *See* 11 U.S.C. § 548(a)(1)(A). The Plaintiff argues that the Debtors transferred the Real Property to the Defendants with the actual intent to defraud their creditors by preventing the Real Property from becoming part of their bankruptcy estate. As the Debtors denied having any such fraudulent intent, the Plaintiff relies on various indicia of fraud, including the Debtors' fraudulent behavior in other contexts, for proving actual fraud in this instance. However, with respect to this particular transaction, the Court finds that the Debtors were not acting with the intent to defraud their creditors, but rather were trying to protect the Defendants, their son and daughter-in-law.

Rarely will a debtor testify that a transaction was completed with the intent to defraud. Accordingly, the trier of fact must usually find fraud based on inference and circumstantial evidence. As the Defendants counsel astutely recognized and stated during closing arguments: fraud is something you know when you see it. The Court sees no fraud in the transfer at issue

8

here. As a result, the Plaintiff has failed to meet his burden of proving a fraudulent transfer claim under § 548(a)(1)(A) of the Bankruptcy Code.

## 2. Preferential Transfer—11 U.S.C. § 547

A trustee must establish the following six elements in order to prove a preferential transfer claim: (1) the transfer of an interest of the debtor in property; (2) the transfer was made to or for the benefit of a creditor; (3) the transfer was made for or on account of an antecedent debt; (4) the transfer was made while the debtor was insolvent; (5) the transfer was made within ninety days of the petition date; and (6) the transfer resulted in the creditor receiving a greater distribution than a hypothetical chapter 7 distribution. *See* 11 U.S.C. § 547(b). Once the Plaintiff meets his burden of proving the basic elements of a preference pursuant to § 547(b), the burden of proof shifts to the Defendants to establish one of the statutory defenses codified in § 547(c). *See* 11 U.S.C. § 547(g).

### a. Preference Claim—11 U.S.C. § 547(b)

It is undisputed that the Deed conveyed the Debtors' interest in the Real Property to the Defendants. It is undisputed that the Defendants are creditors of the Debtors. It is undisputed that the Deed was executed on account of the $150,000.00 debt evidenced by the Promissory Note. It is undisputed that the Deed was executed and recorded during the ninety-day period immediately prior to the Petition Date. Pursuant to § 547(f) of the Bankruptcy Code, the Debtors are presumed to have been insolvent on and during the ninety days immediately preceding the Petition Date; the Defendants have not offered any evidence that would rebut that presumption.

The only element under § 547(b) as to which any dispute exists is whether the Defendants received more value in the Real Property than they would have received from a hypothetical chapter 7 distribution. The starting point for this analysis is determining the value

9

of the Real Property, which the Court will assume is $100,000.00 for purposes of this analysis. The next step is to compare this value to the presumed amount of a hypothetical chapter 7 distribution. As required by § 1129(a)(7)(A) of the Bankruptcy Code as a prerequisite to confirmation, the Court previously concluded that the distribution to be received by general unsecured creditors under the Plan will exceed the distribution in a hypothetical chapter 7 case. Because the Plaintiff anticipates paying a 15% dividend under the Plan, a hypothetical chapter 7 distribution to the Defendants on account of the Promissory Note likely would be less than $22,500.00, which is 15% of $150,000.00. Because the value of the Real Property exceeds the distribution that the Defendants would have received if the Base Case were converted to a chapter 7 case, the sixth element of a § 547(b) preference claim has been satisfied. Thus, the Plaintiff has met his burden of proving the elements of his preferential transfer cause of action.

      b.  <u>Contemporaneous Exchange of New Value Defense—11 U.S.C. § 547(c)(1)</u>

Although the elements of § 547(b) have been met, the trustee may not avoid a transfer to the extent that such transfer was intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange of new value and was, in fact, a substantially contemporaneous exchange. *See* 11 U.S.C. § 547(c)(1). There are two keys issues with respect to the Defendants' contemporaneous exchange defense in this Adversary Proceeding: (1) whether the Debtors and the Defendants intended the transfer of the Real Property to occur contemporaneously with the release of the Lot 410 Deed of Trust; and (2) whether the transfer of the Real Property was, in fact, substantially contemporaneous with the release of the Lot 410 Deed of Trust.

At the time that the Defendants executed the Lot 410 Satisfaction, the parties to the transaction contemplated the Defendants receiving a replacement security interest in Lot 427. It

10

was not until a week after the Lot 410 Satisfaction's recordation that the Defendants and the Debtors signed a contract agreeing to convey a fee simple interest in the Real Property—rather than a security interest in Lot 427—as consideration for the release of the Lot 410 Deed of Trust. The Debtors and the Defendants could not have intended the transfer of the Real Property to occur contemporaneously with the release of the Lot 410 Deed of Trust because the Real Property was not identified as the consideration for the release of the Lot 410 Deed of Trust until some point in time after the Defendants executed the Lot 410 Satisfaction and authorized its recordation.

Mr. Hemphill testified during trial that he intended to receive a replacement interest in the Real Property prior to executing the Lot 410 Satisfaction. However, even assuming the veracity of such self-serving testimony, the Defendants have failed to meet their burden of proving the intent prong of their contemporaneous exchange defense. Section 547(c)(1)(A) of the Bankruptcy Code requires that both the creditor *and the debtor* intend the transfer of the debtor's property to occur contemporaneously with the receipt of the new value. The weight of the evidence here indicates that, despite whatever intent the Defendants may have had, the Debtors did not intend to replace the Defendants' interest in Lot 410 with an interest in the Real Property at the time that the Defendants signed the Lot 410 Satisfaction. Rather, the Debtors intended the replacement collateral to be Lot 427. Moreover, the Debtors never intended a contemporaneous exchange of any replacement collateral because they instructed the attorneys to indefinitely refrain from recording a deed of trust on Lot 427 until they had an opportunity to determine whether they would be selling Lot 427 to a third-party purchaser.[3]

---

[3] In fact, Mr. Nolan, during his trial testimony, described his own efforts in getting the Defendants to execute the Lot 410 Satisfaction prior to the receipt of a replacement interest as coercion.

11

The Debtors and the Defendants did not intend the Deed to be executed and recorded contemporaneously with the execution and recordation of the Lot 410 Satisfaction. Therefore, the Defendants have failed to prove the requisite intent under § 547(c)(1)(A) of the Bankruptcy Code.

In addition, the Defendants have failed to prove that the execution and recordation of the Deed was, in fact, substantially contemporaneous with the execution and recordation of the Lot 410 Satisfaction under § 547(c)(1)(B) of the Bankruptcy Code. Considering the circumstances surrounding, and the nature of, the transaction at issue, a three-week delay between the recordation of the Lot 410 Satisfaction and the recordation of the Deed cannot be considered substantially contemporaneous. Based on the foregoing, the contemporaneous exchange of new value defense fails under these facts.

      c. <u>Ordinary Course of Business Defense—11 U.S.C. § 547(c)(2)</u>

The Defendants also assert that the transfer reflected a transaction in the ordinary course of business. The trustee may not avoid a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee; or made according to ordinary business terms. *See* 11 U.S.C. § 547(c)(2). The ordinary course of business defense is narrowly construed. *See Ames Merchandising Corp. v. Cellmark Paper Inc. (In re Ames Dep't Stores, Inc.)*, 450 B.R. 24, 32 (Bankr. S.D.N.Y. 2011).

Although the Defendants and the Debtors entered into many real estate transactions in the past, both Mrs. Nolan and Mr. Hemphill testified unequivocally that the transfers at issue in this Adversary Proceeding were unique compared to all prior dealings between them. By way of

12

Case 11-03085 Doc 38 Filed 10/03/12 Entered 10/03/12 08:50:25 Desc Main
Document Page 13 of 15

example, this was the first time that the Defendants borrowed on the equity in their home in order to loan the Debtors money. In addition, the Promissory Note and the Lot 410 Deed of Trust are the only examples of the Debtors executing a promissory note or deed of trust in favor of the Defendants. Given the admitted uniqueness of the transactions at issue here, the Defendants have failed to meet their burden of proving that the debt was incurred, or that the transfer was made, in the ordinary course of business or financial affairs between the Defendants and the Debtors.

Likewise, the Defendants have failed to meet their burden of proving that the transfer was made according to ordinary business terms. This defense requires the preference defendant to introduce at least some evidence of industry norms. However, the Defendants proffered no such evidence,[4] and their failure to do is fatal to their defense under § 547(c)(2)(B) of the Bankruptcy Code.

In sum, the Plaintiff has met his burden of proving that the transfer of the Real Property to the Defendants is an avoidable preference, and the Defendants have failed to prove that any of the statutory defenses apply. Because the Court rules in favor of the Plaintiff on his preference cause of action, the Court will not address the Plaintiff's remaining fraudulent transfer causes of action pursuant to §§ 544 and 548 of the Bankruptcy Code.

### 3. Avoidance Remedy—11 U.S.C. § 550

To the extent a transfer is avoided as a preference under § 547 of the Bankruptcy Code, the trustee may recover the property transferred from the initial transferee of such transfer. *See* 11 U.S.C. § 550(a)(1). Having determined that the transfer of the Real Property is an avoidable

---

[4] In fact, the only evidence shedding light on industry standards in this context came from testimony given during the Plaintiff's case-in-chief by one of the attorneys handling the real estate transactions at issue. Contrary to the Defendants' contentions, the attorney testified that it was abnormal for a commercial lender to cancel a lien prior to receiving full payment on the underlying note.

13

preference, the Plaintiff may recover all legal and equitable title to the Real Property from the Defendants.

### B. CLAIM DETERMINATION

The evidence presented at trial indicates that the Debtors owed an outstanding unsecured obligation to the Defendants in the total amount of $420,274.54 as of the Petition Date. Given the odd procedural posture of the claim determination before the Court, the Court will treat the Defendants as if they had filed a timely proof of claim in the amount of $420,274.54, but, in accordance with prior order of the Court, the allowed amount of the claim will be capped at $185,000.00.

In addition to the foregoing, § 502(h) of the Bankruptcy Code provides that "[a] claim arising from the recovery of property under [§ 550 of the Bankruptcy Code] . . . shall be allowed . . . the same as if such claim had arisen before the date of the filing of the petition." *See* 11 U.S.C. § 502(h). Thus, the $150,000.00 principal indebtedness evidenced by the Promissory Note must be added to the Defendants' $185,000.00 unsecured claim, such that the Defendants have a total allowed general unsecured claim against the Debtors' bankruptcy estate equal to $335,000.00, and the Defendants shall be treated as beneficiaries of the liquidating trust with an allowed claim in that amount.

**IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. The Plaintiff failed to meet his burden of proving that the Debtors' transfer of the Real Property to the Defendants was a fraudulent transfer pursuant to § 548(a)(1)(A) of the Bankruptcy Code;

2. The Plaintiff satisfied his burden of proving that the Debtors' transfer of the Real Property to the Defendants was an avoidable preference pursuant to § 547(b) of the Bankruptcy Code;

3. The Defendants failed to demonstrate that any statutory defenses under § 547(c) of the Bankruptcy Code preclude the Plaintiff's avoidance of the preferential transfer of the Real Property;

4. The Plaintiff is entitled to all legal and equitable title to the Real Property pursuant to § 550 of the Bankruptcy Code;

5. Judgment shall be entered in favor of the Plaintiff, voiding the transfer effected by the Deed recorded in Book 5125, Page 599 of the Union County Public Registry; and

6. The Defendants' claim against the Debtors' estate shall be ALLOWED as a general unsecured claim in the amount of $335,000.00.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**

**United States Bankruptcy Court**